at all. So, let's see, Mr. Spagnoli, am I pronouncing that right? Yes, Your Honor. So you have reserved two minutes for rebuttal. That gives you eight minutes out of the gate. Just give us one second. All right, you may proceed. Thank you, Your Honor. May it please the Court, Charles Spagnoli of Ferrara-Fiorenzo, California, please. I'm a lawyer and I work on behalf of the Veterans of PEC for the Appellate. Following a relatively short employment as a probationary high school principal, plaintiff Lisa Krause's work performance issues culminated in two incidents which prompted the Uriscony Central School District to terminate her. The first involved her changes to a students 504 accommodation plan and the second involved her decision to abandon efforts to fix the class bell system at the high school and instead do without bells at all. She implemented both decisions without consulting or notifying the Board of Education or the superintendent of schools. Following her termination, she brought this litigation which by trial was reduced to claims of gender discrimination in her termination and gender-based hostile environment harassment under Title VII of the Civil Rights Act and New York Human Rights Law. The trial was riddled with errors. So let's jump into that. So look, as a trial judge, I mean, everybody's entitled to a trial and a fair trial, but nobody gets a perfect trial. That's just the nature of trials. So many decisions have to be made that there are a few flubs along the way. You've alleged a grab bag of errors. I guess it'd be useful to know, what do you think, I mean, what are the three principal errors that denied your clients a fair trial? Your Honor, I was prepared to talk here specifically about three primary errors. Well, thank you. The first one was that the judge instructed the jury that Education Law 4402 applies to 504 plans. That is not true. The language of the statute is absolutely clear. It applies only to individualized education programs under the Americans with Disabilities Act. By giving this instruction to the jury, the judge effectively told them that the school district violated the law by not allowing Ms. Krause to change the 504 plan. That effectively led the jury by the nose to ruling against the school district in this case. Well, it's one of your two proffered, non-discriminatory reasons for termination. Absolutely. Well, it's one of the two primary incidents at the end of her termination. Absolutely, Your Honor. I mean, it's so clear how that error would have misled the jury so substantially as to take their verdict and draw their attention away from the long history of interactions between the school district and Ms. Krause. There was confusion about what she was or wasn't entitled to do, how she dealt with the parents, what the parents' testimony was about whether they welcomed or didn't welcome her involvement in making a temporary change. This seemed like a kind of legal nicety that I found it difficult to understand. Was it highlighted that the school district therefore violated the law? I thought it was just a kind of brief misstatement by the judge that was unlikely to mislead the jury in any material way. Your Honor, those two incidents were the primary incidents that we advanced as justifying her termination. I'm focusing just on this one, the misstatement by the district judge. Plaintiff's counsel argued extensively that Ms. Krause was entitled to make the changes pursuant to Education Law 4402 and therefore when the school district said, no, that was in violation of our policy and the law, it was lying. And when an employer allegedly lies about its reasons for termination, the jury is not left with much recourse but to rule that gender discrimination played a part. I'm sorry, I just want to say, but wasn't there other evidence that came out, I mean the problem with the instruction is suggesting that that provision applies which says in fact these plans can be modified, but wasn't there evidence that came out at trial in fact that the 504 plans could be modified? And so to the extent that the jury is already hearing that or coming to the conclusion that, well maybe this wasn't really, the modification might not have been the reason because in fact there was also evidence that 504 plans had been or could be modified by the district without the committee approval. There wasn't evidence from our side that 504 plans could be modified by a district without a 504 committee being convened. That was the reason that Ms. Krause. But there wasn't, I'm sorry, but just to be clear, there wasn't testimony or information in an affidavit that one of the witnesses said that they were aware that on a temporary basis 504 plans had been modified? I'm sorry, I'm having trouble hearing you. Sorry. There wasn't in the affidavit of one of the witnesses, and I'm sorry I don't have it in front of me, that there had been occasions where 504 plans were temporarily modified or modified in minor ways without going through the committees? I don't recall that. I don't recall that affidavit certainly going before the jury. The testimony from the school district witnesses, all the competent testimony, was that modification to a 504 plan by the school district's express policy had to be through a 504 committee. They did not have an alternative route whereby a high school principal could go out and make an agreement on behalf of the school district to change a 504 plan. The second major issue, Your Honor, is that plaintiff was allowed to introduce hearsay testimony suggesting that male principals had received more favorable treatment, but when the defense had its opportunity to present its proof, we were prevented from eliciting testimony to indicate that those male principals were not guilty of comparable misconduct and work performance issues. So in a gender discrimination case, we were prevented from showing that plaintiff's alleged comparators were not comparable. That is a clear abuse of discretion. Plaintiff was also allowed to introduce extensive testimony from the parents of the 504 student and from a disaffected employee, Colleen Zumbrun, essentially blackening the school district's name on a variety of issues that had nothing to do with the plaintiff or gender discrimination and which involved incidents that either predated plaintiff's employment or long post-dated her employment. So is that number three or that's part of number two? That's number three. Okay. That testimony was introduced simply to, again, blacken the school district in the eyes of the jurors. And I know plaintiff's counsel is... Wasn't that testimony in particular about the problems that these, I guess the denizens had with her, isn't that relevant to the idea of the reasons why the plaintiff was trying to negotiate or serve in some roles with regard to the 504 plan and I guess the parents' dissatisfaction with it? That's exactly what I was about to speak to, Your Honor. Plaintiff's counsel has argued that that testimony was necessary so the jury would know why the school district allegedly was allowing Ms. Krause to make the changes to the 504 plan. But I submit to you that that is an illogical argument because if the school district actually wished to offer an olive branch to these parents, it would simply have made the changes through its 504 committee procedure. It would not have broken with policy and with law and had a high school principal make the changes on her own. But some of this evidence would have been obviously relevant to provide context for the whole 504 issue, right? I don't agree, Your Honor. The only issue on the 504 plan was that plaintiff took it upon herself to make changes to the 504 plan. The evidence introduced by the parents had to do with supposed noncompliance by the school district with arrangements that were made before the student was even on a 504 plan. Look, I can see the argument that it was far afield and the relevance sort of began to dissipate, but the existence of a dispute and the particular dispute that was at issue with the 504 plan that resulted in her firing, according to you. I mean, you need some context or background, right? Your Honor, that context was already there in that these parents had issues with the school district. The vast prejudice created by having the parents and the disaffected employee go on and on about all of their gripes about the school district vastly outweighed any marginal relevance that could possibly have attached to the evidence. So I see my time is up. Your argument about Zumbrun is that, you know, she also sort of piled on about what a dysfunctional place it was, but that her complaints had nothing to do with gender discrimination or a hostile workplace based on gender. As she herself admitted, yes, Your Honor. Thank you. All right, thank you. You have two minutes for rebuttal. We'll now hear from Ms. Bosman. Bosman, am I saying that right? Yes, you are, Your Honor. Good morning. Thank you. May it please the Court. Evidence of gender-based hostile work environment is also evidence of gender discrimination. OK, but Zumbrun has nothing to do with gender-based hostility or bias, right? Actually, it does. Why? Because in her, Zumbrun, are you talking about her letter to the board? I'm talking about, I mean, the evidence that came in about her problems with a different administrator who is female. I'm blanking on the name at the moment. That goes to the hostile work environment and the district's failure to address the hostile work environment. The hostile work environment has to be premised on a particular category, right? It's not just that it's a nasty place to be. It has to be hostile toward a particular group, in this case, women. And she identified that Ms. Lowell had done that to Lisa Krause. And so Zumbrun's testimony with respect to the environment of the school district was important to show that the district was not taking complaints of hostility seriously. Ms. Krause went to the board members individually and complained of the treatment and then went to the president of the board and said, now he's throwing papers at me. The board members said, don't worry about it. I don't know anything about it. There's nothing wrong with your job. Even when she said, he's threatening to fire me. And I'd like to put into context what Mr. Spagnoli is stating about this misstatement or this instruction about the 504 plan and the 4402. If you look at the record, what Mr. Excuse me. Do you agree, though, that the district court misspoke when he said New York education's law, 4402, was the law concerning the 504? No. And if you look at it in context, what happened was, is Ms. Beck was on the stand. Mr. Spagnoli was cross-examining her. And he was trying to prove a negative. And at the end or close to the end of that cross-examination, he says, Judge, I have the copy of 4402. And the judge said, quote, you may have to consider. He told the jury, you may have to consider 4402. Well, they didn't. Because 4402 was his attempt to prove a negative through Ms. Beck. And the affidavit Wasn't the district court suggesting a connection between 4402 and 504? No. Mr. Spagnoli brought that up. If you look at the transcript, what he said is, I would like to read the portion of 4402. I'd like to have the court take judicial notice of 4402 and read the pertinent section of the law. Right. And then the district courts interrupted counsel to state, okay, now, before we go any further, you have heard the law concerning the 504 plans. Because that's what Mr. Spagnoli represented. No. He represented it was not the law concerning 504 plans. He was trying to prove a negative. You're right. He was trying to say that this law pertains to something else. Right. IEPs. And he did argue that in his closing. Right. But the court told the jury that this is the law that pertains to 504 plans. Because that's what Mr. Spagnoli represented. And that's what Ms. Lowell and Ms. Lubdell represented in their affidavits that 4402 applies. I'd like to draw the court's attention to a recent decision from the third department called AJ versus Canastota Central School District. And it's a slip opinion, 534854, issued on January 17th of this year, that goes into exactly this kind of discussion, this interplay. But ultimately it's a red herring because the issue wasn't whether or not the 4402 allowed or disallowed Ms. Krause to change temporarily a 504 plan because the jury was never asked to make that decision. They were never asked to make that determination. But it's still relevant to this question up to the extent that they're trying to determine whether or not the reasons given for firing her were pretextual. The fact that the school was saying, well, you know, we're not, this was a big deal that she modified the 504 plan. And so to the extent that the jury is hearing something that mistakenly says whether or not by law these can be modified, I mean, that certainly seems relevant. Yes, the jury doesn't have to decide specifically what is the law on 504 plans? Was this proper? But if they're being told, oh, actually, it's fine to modify these because they're mistakenly thinking that this applies, that the IEP standards apply, that does matter, doesn't it? No, because it wasn't part of the decision they were making. The question was, was it pretext? Was there argument? Right. And if they're saying, you know, this is a big deal if, you know, this violates potentially, this violates the law, and so we couldn't let someone modify these plans, I mean, that goes to whether or not you believe there are reasons for firing her. But the jury could believe Lisa Krause's statement that Lobdow and Loll told her to meet with the parents, she did as she was told, and they told her to try it out for a couple weeks before the committee would meet. And so they had the ability, I mean, ultimately, it was not outcome determinative because of Lisa Krause's testimony. To the contrary, they told me to do this, I did what I was told. Well, but the issue, I guess, I think as Judge Lee was suggesting, is the jury more likely to find a pretext when they've been told that the law contradicts the school district's policy as to what is required and what's not required. Yeah, but if you look at the policy, it doesn't say you can't change a 504 plan. It doesn't say you can, but it doesn't say you can't. It doesn't address amendments at all. The 504 policy of the district is, it's silent on that issue. So, and they had that in front of them. The 504 policy of the district was an exhibit in front of the jury. So, I mean, we're entitled to rely on their ability to discern whether or not that policy permitted or did not permit or was illegal or was not illegal when it comes to modifying that policy. Look, I think you would obviously get to make those arguments. I think the point of Mr. Spagnoli is that it's a lot easier to make those arguments when the jury has a misimpression of the law. Yeah, I don't believe that if you read the context, if you read the statements in context. I read them, believe me. You don't have to doubt I didn't read them. I'm sorry? I read them. Yeah. He said you may have to make this decision. He? I just read to you what he said. He said you may have to decide whether or not this applies. Now, before we go any further, you have heard the law concerning the 504. Which is what he represented. Okay. And then he said you may have to decide this issue, which ultimately they did not. But I'd also like to address the argument that counsel made. And because he's not challenged the hostile work environment, because evidence of hostile work environment based on gender is also evidence of discrimination, again, that waiver has occurred as a result of him not raising that in his principle brief. Now, the 56G argument as well, where he says that he's entitled to challenge the summary judgment decision based upon the fact that she wasn't entitled to damages in the but-for causation for that issue. Those are being conflated by counsel. They're separate issues. They're separate arguments. And one doesn't apply to the other. The fact that the plaintiff was not able to prove but-for causation based upon the Section 1983 claim does not, ergo, say that she can't prove motivating factor under Title VII. I think that's clear. It was not argued at the summary judgment stage. Mr. Spagnoli did not argue that the damages should be precluded under Title VII as a result of the but-for. He didn't argue that at the district court. And so, therefore, that is waived. Additionally, with respect to the issue on, I don't know if you want me to address any more on that, but the burden of proof under Section 1983 for the plaintiff is to prove that the employer would not have made the same decision in the absence of the prohibited and unlawful conduct. And that's the Namofsky v. Norris decision. The defendant's burden of proof under Title VII is that they would have taken the same adverse action without discriminatory motive. So when you look at this 504 and Bells issue, what you've got to look back at is that in February of 2016, Mr. Callahan was telling the board, I'm going to terminate her, you're entitled to the best, and I've got somebody else in mind. He even told the board in his news and notes statement that he was going to put her on a PIP, but he was still going to terminate her. So there's that bad faith there. And that follows these statements, like your office is girly, I love it when women wear dresses, I hate working with women because they're so emotional. So in the context of that evidence of the hostile work environment based upon discriminatory motive, I believe that the verdict should be affirmed. Thank you. Thank you. Mrs. Spagnoli, you have 2 minutes to rebuttal. Thank you, Your Honor. The 3rd Department case Ms. Bosman referenced merely cited to the decision in this case. Offhand, it did not address the question whether 4402 really applies to 504 plans. That issue is not a major issue. So you've heard several times Ms. Bosman say that you were trying to tell the jury that 4402 applies to 504 plans. Your Honor, there were some drafting errors in affidavits that were presented on summary judgment, but at trial that was clarified. We made very clear that 4402 does not cover 504 plans. Certainly any drafting errors in our affidavits do not justify the judge in giving an incorrect instruction as to what the law actually is. She also cited the 504 policy of the district. The 504 policy is very clear that the 504 committee shall create and be responsible for 504 plans. That certainly includes creation of any new or modified plans. Ms. Bosman argued that we haven't challenged the hostile environment claim. That's not true. We have asked for the verdict to be reversed on that as part of our judgment as a matter of law argument in our principle brief. With regard to the summary judgment issue, Judge Kahn found that on summary judgment we showed there was no but-for causation between gender discrimination and determination. Plaintiff's counsel suggests that, and Judge Hurd, the trial court judge, suggested that the issue is different for the Title VII affirmative defense than it is for the equal protection claim. As one jurist has said, if an employer would have made the same employment decision even in the absence of a discriminatory motive, that's the Title VII affirmative defense, by logical necessity, that discriminatory motive could not have been a but-for cause of the employment decision. That's the Section 1983 defense. The inverse is also true. That's from Perez v. County of Rensselaer, a March 2020 decision of the Northern District, and the jurist in question was one honorable David Van Hurk. Thank you. All right. Well, thank you both. We will reserve decision.